RICHARD J. SULLIVAN, *Circuit Judge*, concurring in part and dissenting in part:

I agree with the majority that (i) the district court correctly dismissed the Zokari brothers' suit under 8 U.S.C. § 1503(a)(2) of the Immigration and Nationality Act ("INA"); (ii) the brothers' constitutional claims lack merit; and (iii) an appeal of a final order of removal pursuant to 8 U.S.C. § 1252(b) does not constitute an adequate remedy for the brothers' injury. But I cannot join its holding that the brothers may therefore seek judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, for the simple reason that section 1503(a) of the INA furnishes them with an alternate "adequate remedy in a court," *id*; *see* 8 U.S.C. § 1503(a). Accordingly, I respectfully dissent from that portion of the majority opinion.

Section 1503(a) provides a cause of action to "any person who . . . claims a right or privilege" as a U.S. national "and is denied such right or privilege . . . upon the ground that he is not a national of the United States." The statute nonetheless makes clear that "no such action may be instituted" where "the issue of such person's status as a national . . . (1) arose by reason of, or in connection with any removal proceeding" or "(2) is in issue in any such removal proceeding." *Id.* § 1503(a)(1), (2).

Interpreting this text, the majority correctly affirms the district court's dismissal of the brothers' citizenship suit pursuant to section 1503(a)(2) because they brought it while their citizenship claims were "in issue" in removal proceedings. *See* Maj. Op. at 9–10; *see also* 8 U.S.C. § 1503(a)(1), (2) (stating that "no such action may be *instituted*" when a citizenship claim remains in question in removal proceedings (emphasis added)). But it does not follow that the brothers may never again seek relief under section 1503(a). Rather, if they were to file a new section 1503(a) suit now that their removal proceedings have terminated, there is no reason that suit would be barred by either exception. This conclusion follows from the text of the statute and persuasive precedent.

## I. The Exceptions in Section 1503(a) Vary in Scope.

I begin, as I must, "with the text." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Env't Prot. Agency*, 846 F.3d 492, 512 (2d Cir. 2017). As a matter of statutory interpretation, the exceptions in section 1503(a) vary in scope. *See Bowe v. United States*, 607 U.S. 13, 37 (2026) (recognizing as a "cardinal rule of statutory interpretation" that "differences in language convey differences in meaning"). In particular, the exception in section 1503(a)(1) is narrower than that in section 1503(a)(2): it bars review *only* of U.S. citizenship claims that "arose" "by

reason of, or in connection with" removal proceedings. *Id.* § 1503(a)(1). For a claim to "arise" out of a proceeding, it must "spring up," "originate," or "come into being" from the proceeding. BLACK'S LAW DICTIONARY (4th rev. ed. 1968) (defining "arise"). Accordingly, if a claim "arises" "by reason of, or in connection with" a removal proceeding, it either "springs up" from the proceeding itself or from some "established or discoverable" relation to the proceeding (such as a motion to reopen the removal proceeding). *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001). The key question for this exception, then, is did the citizenship claim originate (i) in a removal proceeding – or a related proceeding within the Executive Office of Immigration Review ("EOIR") – or (ii) in some legally distinct proceeding, such as a naturalization application through U.S. Citizenship and Immigration Services ("USCIS")? If the latter, the action cannot be barred by this exception.

By contrast, the second exception in section 1503(a) is broader: it bars declaratory citizenship suits at any time there is an ongoing removal proceeding in which a party also raised a citizenship claim. Under this exception, it does not matter whether there is any "relation" between the two proceedings, *Coregis*, 241

F.3d at 123; the question is simply whether they overlap in time. If so, an individual may not bring an action under section 1503(a).

## II. The Zokari Brothers May File a New Section 1503(a) Suit.

Here, because the broad language of section 1503(a)(2) bars any action when removal proceedings are ongoing, the fact that the brothers' action initially challenged USCIS' denial of their N-600 ("Certificate of Citizenship") applications – rather than the removal proceedings themselves – is of no moment, since the action was commenced *while* they were in the midst of removal proceedings. *See* Suppl. App'x at 31. Nonetheless, as the statute's text indicates and the government itself argues, the Zokari brothers can move to reopen their N-600 applications with USCIS now that their removal proceedings have ended; if those motions are denied, they are free to file a new section 1503(a) action. At that point, the section 1503(a)(2) exception would not apply because there would be no concurrent removal proceedings.

Nor would section 1503(a)(1) bar the action because the motion to reopen would contain new evidence and a fresh citizenship claim, which would not "arise" out of or "in connection with" the long-closed removal proceedings. 8 U.S.C. § 1503(a)(1), (2). Indeed, if Congress intended to bar all future citizenship

claims simply because an individual had raised one before as an affirmative defense in a removal proceeding, then it would have written a single exception barring all actions where a citizenship claim "is or was in issue" in a removal proceeding. *Id.* § 1503(a)(1); *see Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("Congress says in a statute what it means and means in a statute what it says there." (internal quotation marks omitted)). Instead, Congress drafted a sweeping exception in the present tense – in effect, channeling all citizenship claims into one existing proceeding when the issue remains live in ongoing removal hearings – and a narrower exception in the past tense to bar parties from seeking federal review of an adverse removal order after the proceedings have terminated, and thereby, getting a second bite at the removal apple. *Cf. United States v. Tohono O'Odham Nation*, 563 U.S. 307, 314 (2011) ("The rule . . . effects a significant jurisdictional limitation . . . curtailing redundant litigation."). Put simply, the exceptions, as drafted, appear to expressly *permit* declaratory citizenship suits so long as (i) no removal proceedings are ongoing, and (ii) the suit is not an attempt to relitigate a closed removal proceeding.

This reading of the statute's text – and the conclusion about the section 1503(a) remedy that follows from it – also aligns with the decisions of our sister

circuits. For example, the Fifth Circuit explained that "[s]o long as a citizenship claim finds its genesis outside of the context of removal proceedings, [section 1503(a)(1)] is no bar to jurisdiction; thus . . . once removal proceedings have run their full course and terminated, any future citizenship claim would not arise in those removal proceedings." *Rios-Valenzuela v. DHS*, 506 F.3d 393, 399 (5th Cir. 2007). The Seventh Circuit reached a similar conclusion in *Ortega v. Holder*, holding that "[b]ecause . . . there is nothing in the statute to lead us to conclude that Congress desired [such individuals] . . . to be without any remedy, we believe that the appropriate course . . . is simply [for the party] to . . . begin the process of establishing . . . nationality anew." 592 F.3d 738, 746 (7th Cir. 2010).

Anticipating this argument, the brothers counter with two reasons as to why a new section 1503(a) suit would be unavailable to them. Neither is persuasive. *First*, they contend that they have already filed a motion to reopen their N-600 applications, and USCIS denied it. *See* Zokari Br. at 9–10. That simply cannot spell the end of the story, however, because parties can submit multiple motions to reopen. *Villegas v. Noem*, 149 F.4th 554, 569 (5th Cir. 2025) (describing section 1503(a) proceedings after party's "second . . . motion to reopen was denied"). And while parties generally must submit these motions within a sixty-day period after

the denial, federal regulations permit later submissions when the "delay was reasonable" – for example, because new evidence did not surface until after the deadline had passed. 8 C.F.R. § 103.5. What is more, the fact that the brothers' N-600 motions were ultimately denied – or could be denied again – is irrelevant, for all they need is a *rejected* N-600 application to file a new section 1503(a) suit, this time without the jurisdictional bar. The point is thus not that these motions would succeed, or that they would need to; it is that they offer pathways to relief irrespective of their success.

*Second*, the brothers contend that they may not file a new section 1503(a) suit because the five-year statute of limitations to bring such a suit has run. *See* Zokari Br. at 9 (noting that, because "the N-600 appeal was denied on December 19, 2019," the five-year "statute of limitations to bring a [section] 1503(a) action therefore [ran] on December 19, 2024"); 8 U.S.C. § 1503(a) (a suit "may be instituted only within five years after the final administrative denial of [the] right or privilege"). That is similarly unpersuasive. For starters, this Court has *never* held that the clock for the five-year limitations period begins to run after the initial denial of an N-600 rather than a later one, and other courts, including the Fifth Circuit, have held that motions to reopen or reconsider "extend[] the time to file a [section 1503(a)]

proceeding." *Villegas*, 149 F.4th at 571. There is also no authority that the INA's statute of limitations (i) is jurisdictional or (ii) precludes equitable tolling. *See, e.g.*, *Henry v. Quarantillo*, 684 F. Supp. 2d 298, 308 (E.D.N.Y. 2010) ("Perhaps, on the basis of . . . [a party's] claimed inability to have discovered critical evidence in a timely manner, he might have a claim that [section 1503(a)'s] statute of limitations should be equitably tolled."). In any event, there is no reason to assume that the brothers' arguments to this effect will fail before they have even made them.

## III. The Zokari Brothers Retain an Adequate Remedy in Court.

Because it is clear to me that the brothers retain avenues for relief through the N-600 process – and thereafter under section 1503(a) – I cannot agree with the majority that "no party has proposed" an adequate remedy, Maj. Op. at 12, such that the brothers warrant relief under the APA. As it stands today, the section 1503(a) remedy is wholly available; it is the precise remedy that the *government* itself proposes and describes in careful detail, *see* Gov't Br. at 45–47; and it aligns with what our sister circuits have endorsed.[1]

Finally, it bears noting that this alternative remedy is also more consistent with the statutory schemes enacted by both the INA and the APA, the latter of

[1] The majority contends that the government "did not develop" the availability of this remedy in its briefing and accordingly failed to preserve it. Maj. Op. at 18 n.5. But that conclusion is

which permits judicial review of agency actions only when "there is *no other* adequate remedy in a court." 5 U.S.C. § 704 (emphasis added). As the Supreme Court has observed, section 704 of the APA "makes . . . clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency actions." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). The majority opinion effectively reads section 704 to do just that, offering the brothers a novel APA remedy in *addition* to the pathways available to them through USCIS and section 1503(a). *See id.* Because I agree with the government that the Zokari brothers should be "seeking relief from USCIS," Gov't Br. at 47, rather than through the APA, I respectfully dissent as to this part of the majority's opinion.

---

contradicted by the record. All a party must do to preserve an argument for appellate review is include in its brief "[its] contentions and the reasons for them, with citations to the authorities and parts of the record on which the [party] relies." Fed. R. App. P. 28(a)(9)(A). Here, the government devoted two whole pages in its brief to the availability of a new section 1503(a) suit for the Zokari brothers. *See* Gov't Br. at 46–47. It specifically emphasized that "if Plaintiffs believe there is new evidence supporting their respective N-600 applications, they should be seeking relief from USCIS" by filing a motion to reopen, which would "*eliminate*[] *the jurisdictional bar* to any court action created by way of [section] 1503(a)(1)." *Id.* (internal quotation marks omitted). That echoes the arguments the government made below. *See* Suppl. App'x at 93–94. And both below and on appeal, the government cited the precise authorities on which this dissent relies, including *Ortega*. *See* Gov't Br. at 46–47; Suppl. App'x at 94. I therefore see no grounds for concluding that the government failed to preserve or develop this argument on appeal.